UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                       )
AUCTUS FUND, LLC and                   )
EMA FINANCIAL, LLC,                     )
                                       )
                    Plaintiffs,        )
                                       )
          v.                           )          CIVIL ACTION
                                       )          NO. 18-12568-WGY
SUNSTOCK, INC.,                        )
                                       )
                    Defendant.         )
_____)


YOUNG, D.J.                                    September 23, 2019

**MEMORANDUM AND ORDER**


**I.   INTRODUCTION**

    The plaintiffs, Auctus Fund, LLC ("Auctus") and EMA

Financial, LLC ("EMA"), seek damages for the defendant's,

Sunstock, Inc. ("Sunstock"), breaches of four contracts.  Pls.

Auctus Fund, LLC's & EMA Financial LLC's Mot. Entry Final J.

Against Def. Sunstock, Inc. ("Mot. Final J."), ECF No. 50.  The

Court previously entered summary judgment for Auctus and EMA on

those breaches, Electronic Clerk's Notes ("Summ. J. Order"), ECF

No. 38, so the Court now must determine the damages that

Sunstock owes Auctus and EMA.

    Although Auctus's contracts indicate that Nevada law

governs them, the Court sets aside that choice because Nevada

has nothing to do with these contracts.  See Pl. Auctus Fund,

LLC's Emergency Mot. Compel Conversion Debt Public Shares & Inj.

& Equitable Relief Specific Performance Against Def. Sunstock,

Inc. ("Auctus Mot."), Ex. B-2, Convertible Promissory Note

("First Auctus Note") § 4.6, ECF No. 10-4; Auctus Mot., Ex B-4,

Convertible Promissory Note ("Second Auctus Note," and,

collectively with the First Auctus Note, the "Auctus Notes")

§ 4.6, ECF No. 10-6.  Instead, the Court applies California law

to Auctus's contracts and determines that California's usury

laws limit damages to the principal that Sunstock owes.  See

Hardwick v. Wilcox, 217 Cal. Rptr. 3d 883, 886 (Ct. App. 2017)

(quoting Gibbo v. Berger, 19 Cal. Rptr. 3d 829, 834 (Ct. App.

2004)).  Further, the Court offsets the remaining principal that

Sunstock owes in the amount of the interest that Sunstock paid

prior to defaulting.  See id. (citing Westman v. Dye, 4 P.2d

134, 135-39 (Cal. 1931)).

    In contrast, the Court enforces EMA's contracts' choice of

New York law.  See Pl. EMA Financial, LLC's Emergency Mot.

Compel Conversion Debt Public Shares & Inj. & Equitable Relief

Specific Performance Against Def. Sunstock, Inc. ("EMA Mot."),

Ex. C-2, 10% Convertible Note ("First EMA Note") § 4.6, ECF No.

5-5; EMA Mot., Ex. C-4, 12% Convertible Note ("Second EMA Note"

and, collectively with the First EMA Note, the "EMA Notes")

§ 4.6, ECF No. 5-5.  The Court nonetheless concludes that New

York law permits EMA to obtain only the unpaid principal plus interest at the contractual pre-judgment and statutory post-judgment rates.  See Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc., 361 N.E.2d 1015, 1018 (N.Y. 1977).  The Court rejects Auctus and EMA's request that it order Sunstock to convert the cash value of damages into Sunstock equity stock, see Mot. Final J., Ex. 1, Pls.' Auctus Fund, LLC's & EMA Financial, LLC's Proposed Final J. ("Proposed Final J.") 2-3, ECF No. 50-1, because it deems monetary damages "at least adequately compensatory," see Auctus Fund, LLC v. First Columbia Gold Corp., Civ. A. No. 17-10543-ADB, 2019 WL 1316736, at *3 (D. Mass. Mar. 21, 2019) (Burroughs, J.).

## II.  BACKGROUND

### A.  Procedural History

Auctus and EMA filed a complaint in this Court on December 13, 2018.  Compl. Demand Jury Trial ("Compl."), ECF No. 1.  The complaint alleges that Sunstock breached four contracts, two with Auctus and two with EMA.  Id. ¶¶ 39-51, 58-65. Additionally, it asserts that Sunstock violated federal securities laws and other duties that it owed Auctus and EMA under state law.  Id. ¶¶ 52-57, 66-91.  Auctus and EMA moved for a preliminary injunction and writ of garnishment on December 18, 2018.  EMA Mot.; Mem. Law Supp. Pl. EMA's Emergency Mot. Compel Conversion Debt Public Shares & Inj. & Equitable Relief Specific

Performance, ECF No. 6; Pl. EMA's Emergency Mot., Alternative, Attach Assets Def. Sunstock, Inc., ECF No. 7; Mem. Law Supp. Pl. EMA's Emergency Mot., Alternative, Attach Assets Def. Sunstock, Inc., ECF No. 8; Auctus Mot.; Mem. Law Supp. Pl. Auctus' Emergency Mot. Compel Conversion Debt Public Shares & Inj. & Equitable Relief Specific Performance, ECF No. 11; Pl. Auctus' Emergency Mot., Alternative, Attach Assets Def. Sunstock, Inc., ECF No. 13; Mem. Law Supp. Pl. Auctus' Emergency Mot., Alternative, Attach Assets Def. Sunstock, Inc., ECF No. 14. These motions also requested the Court to compel Sunstock's transfer agent, a third party not before the Court, to convert damages into shares of Sunstock equity stock.  Auctus Mot. 2; EMA Mot. 2.

At a December 20, 2018 hearing, the Court ordered the outstanding motions combined with trial on the merits pursuant to Federal Rule of Civil Procedure 65(a).  Electronic Clerk's Notes, ECF No. 15.  The Court further notified Auctus and EMA that it had concerns about whether it could enforce two of the contracts' choice of Nevada law because the contracts might be usurious.

On January 17, 2019, Sunstock having not yet answered the complaint, Auctus and EMA requested the Clerk to notice a default, ECF No. 17.  Sunstock appeared two weeks later and answered the complaint.  Answer, ECF No. 20; Def.'s Mot. Extend

Time File Answer, ECF No. 21.  After two more weeks passed, Sunstock filed oppositions to Auctus and EMA's motions.  Def.'s Mot. Opp'n Both Pls.' Mots. Compel Conversion Debt Public Shares & Inj. & Equitable Relief Specific Performance Against Def. Sunstock, ECF No. 25; Def.'s Mem. Law Supp. Def.'s Opp'ns Both Pls.' Mots. Compel Conversion Debt Public Shares & Inj. & Equitable Relief Specific Performance Against Def. Sunstock & Opp'n Both Pls.' Original & Renewed Mots. Attach Assets Def. ("Opp'n"), ECF No. 27.  Sunstock did not deny that it had defaulted on its debts to Auctus and EMA.  See generally Opp'n. Sunstock objected, however, to Auctus and Sunstock's damages calculation and request for the Court to convert damages into Sunstock equity stock.  Id.

The Court held a hearing on February 28, 2019, where it allowed Sunstock's late answer and notified the parties that it would treat Auctus and EMA's previously filed motions as summary judgment motions on the complaint's contract claims.  Electronic Clerk's Notes, ECF No. 33.  Shortly after that hearing, Sunstock's counsel withdrew.  Mot. Withdraw Counsel Def., ECF No. 35; Electronic Clerk's Notes, ECF No. 36.  To date, replacement counsel has not appeared on Sunstock's behalf in this case.  At a hearing on March 7, 2019, the Court entered judgment on the merits of the complaint's contract claims

against Sunstock.[1]  Summ. J. Order.  Because Auctus and EMA had
filed a brief on damages only on the morning of the hearing, see
Pls.' Mot. File Suppl. Mem. Late & Exceed Page Limitations
("Pls.' Mot. File Late"), ECF No. 37; Pls.' Mot. File Late, Ex.
1, Pl. Auctus Fund, LLC's & EMA Financial, LLC's Suppl. Mem.
Supp. Converted Mots. Summ. J. Contract & Implied Covenant
Claims (Counts III & IV) Alone ("Damages Br."), ECF Nos. 37-1,
the Court postponed a hearing on damages until March 20, 2019.
Summ. J. Order.

On that day, Auctus and EMA filed a motion for leave to
file a further brief on the law governing damages.  Pls. Auctus
Fund, LLC & EMA Financial, LLC's Mot. Leave File Further Suppl.
Memorandum, ECF No. 39.  At the hearing, the Court took the
issue of damages under advisement and later issued an order on
March 21, 2019, which allowed Auctus and EMA to file their

---

[1] Sunstock waived any right to enforce the EMA Notes' venue
selection clause when it failed to invoke it after answering the
complaint and before the Court entered summary judgment.  See
First EMA Note § 4.6 (stating that "[a]ny action brought by
either party against the other concerning the transactions
contemplated by this Agreement must be brought only in the civil
or state courts of New York or in the federal courts located in
the State and county of New York"); Second EMA Note § 4.6
(same); Silva v. Encyclopedia Britannica Inc., 239 F.3d 385,
388-89 & n.6 (1st Cir. 2001) (holding that "a motion to dismiss
based on a forum-selection clause may be raised at any time in
the proceedings before disposition on the merits" and
"emphasiz[ing] . . . that even a mandatory forum-selection
clause does not in fact divest a court of jurisdiction that it
otherwise retains" (quoting M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1, 12 (1972))).

brief.  Electronic Clerk's Notes, ECF No. 42; Electronic Order,
ECF No. 40; see also Pl. Auctus Fund, LLC's & EMA Financial,
LLC's Request Leave File Instant Further Suppl. Mem. Supp. Their
Converted Mots. Summ. J. Contract & Implied Covenant Claims
(Counts III & IV) Alone, ECF No. 41.

While reviewing Auctus and EMA's submissions, on May 6,
2019, the Court ordered Auctus to clarify the basis for this
Court's jurisdiction over Auctus's claims.  Order Show Cause,
ECF No. 43.  Auctus responded on May 28, 2019, ECF No. 45, and
the Court affirmed that it had jurisdiction on May 30, 2019, ECF
No. 48.[2]  Auctus and EMA filed a motion for entry of final
judgment on June 27, 2019, in which they requested unpaid
principal amounts on the loans with contractual and statutory
interest and attorneys' fees.  Mot. Final J.  Auctus further
asked the Court to award punitive damages under the

---

[2] Auctus and EMA premised subject matter jurisdiction on the
complaint's federal securities law claims, and the Court entered
judgment on the breach of contract claims under supplemental
jurisdiction.  See 28 U.S.C. § 1367; Compl. ¶ (citing 28 U.S.C.
§ 1331; 15 U.S.C. §§ 77a et seq.; 15 U.S.C. §§ 78a et seq.).
Nevertheless, though Auctus and EMA convinced the Court that
their federal securities law claims were not so wholly frivolous
as to deprive the Court of jurisdiction, the Court reiterates
the concerns that its order to show cause raised about the
viability of Auctus's federal securities law claims.  Were a
similar set of claims to present itself again, the Court would
consider dismissing them for failure to state a claim after
giving the plaintiffs notice and opportunity to respond.  See
Auctus Fund, LLC v. Sauer Energy, Inc., Civ. A. No. 19-11027-
WGY, 2019 WL 3290541, at *2 (D. Mass. July 22, 2019).

Massachusetts Consumer Protection Act, Massachusetts General Laws chapter 93A ("Chapter 93A"), even though the Court had not granted judgment on the merits or entered a default on that count. <u>Compare</u> Summ. J. Order., <u>with</u> Mot. Final J. Ex. at 1.

### B.   Facts

The Court draws the facts from the uncontested exhibits and uncontroverted averments in affidavits submitted in Auctus and EMA's summary judgment motions.   Auctus is a Boston-based limited liability company, organized under Delaware law.   Auctus Mot., Ex. B-1, Securities Purchase Agreement ("First Auctus SPA") 1, ECF No. 10-3; <u>id.</u>, Ex. B-3, Securities Purchase Agreement ("Second Auctus SPA") 1, ECF No. 10-5; Compl. ¶ 4. EMA maintains its headquarters in New York City, although it was formed in Delaware.   EMA Mot., Ex. C-1, Securities Purchase Agreement ("First EMA SPA") 1, ECF No. 5-4; <u>id.</u>, Ex. C-3, Securities Purchase Agreement ("Second EMA SPA") 1, ECF No. 5-6; Compl. ¶ 5.   Sunstock incorporated in Delaware and maintains its principal place of business in Sacramento, California.   <u>See</u> First Auctus SPA 1; Second Auctus SPA 1; First EMA SPA 1; Second EMA SPA 1; Compl. ¶ 6.

The complaint alleges that Sunstock led Auctus and EMA to believe that Sunstock had a strategy to invest in California convenience stores and commercial and residential real estate. Compl. ¶¶ 10-15.   Auctus and EMA further relate that Sunstock

announced that it intended to "plans to divest up to half of its
cash proceeds in **SILVER BULLION**."  Id. ¶¶ 10, 16-18.

Auctus and EMA say that they decided to invest in Sunstock
based on these representations, which they contend were false.
Id. ¶¶ 10-38.  Auctus agreed to pay Sunstock $112,250 on May 24,
2017.  First Auctus SPA 1, First Auctus Note 1.  About six
months later, on October 11, 2017, Auctus gave Sunstock an
additional $85,000.  Second Auctus SPA 1; Second Auctus Note 1.
Each Auctus Note mandates that Sunstock pay 12% interest on the
principal amount that it received.  First Auctus Note 1; Second
Auctus Note 1.

On June 5, 2017, EMA and Sunstock executed agreements
providing Sunstock with $115,000.  First EMA SPA 1; First EMA
Note 1.  On October 11, 2017, EMA and Sunstock concluded a
second deal, in which Sunstock received an additional $85,000.
First EMA SPA 1; Second EMA Note 1.  The First EMA Note requires
Sunstock to pay 10% interest, while the Second EMA Note sets
interest at 12%.  Id.

All of these notes include a provision entitled "Article
III: Events of Default."  Each note's section III.1 indicates
that Sunstock's failure to make principal or interest payments
on time constitutes an "Event of Default."  Article III in the
Auctus and EMA Notes provide that should Sunstock default,
Sunstock would owe 150% of (1) the principal yet to be paid; (2)

all unpaid interest; and (3) interest on the unpaid amounts
(together, the "Default Sum").  The same article in the Auctus
and EMA Notes provide Auctus and EMA with the right to convert
that sum into equity stock in Sunstock.  Article III of the
Notes also mandates various other flat fees for breach of
certain of the notes' terms.

The prefaces to the Auctus and Second EMA Notes indicate
that the interest rate on payments due on default (the "Default
Rate") is "the lesser of (i) twenty four percent (24%) or (ii)
the maximum allowed by law."  The First EMA Note's preface
states that its Default Rate is 24%; it omits references to any
legal cap on interest.  Section 4.6 of the Auctus Notes
specifies that Nevada law governs the contract, while the same
section of EMA Notes selects New York law.  See First EMA Note
20; First Auctus Note 20; Second Auctus Note 20; Second EMA Note
20.

On June 22, 2019, EMA notified Sunstock that it believed
that Sunstock defaulted on March 6, 2018.  EMA Mot., Ex. 1, ECF
No. 5-2.  EMA reports that Sunstock owed it $57,720 in principal
and $8,388.03 in original interest on the First EMA Note and
$85,000 in principal and $4,080 in original interest on the
Second EMA Note.  Id.  EMA additionally requested default
interest and penalties.  Id.

On July 9, 2018, two days before the First Auctus Note

matured, Auctus sent Sunstock two letters asserting that Sunstock had defaulted.  Auctus Mot., Ex. B-5 at 1, ECF No. 10-7; id. Ex. B-6 at 1, ECF No. 10-8.  According to the letters, Sunstock had paid $31,931.07 on the principal and did not have unpaid accrued interest on the First Auctus Note but owed the entirety of the principal plus $6,958.36 on the Second Auctus Note.  See id.  The letters also demanded default interest and penalties from breaches of other provisions of the Auctus Notes. Id.

## III. ANALYSIS

The Court must answer three questions to assess the damages that Sunstock owes Auctus and EMA on the contract claims. First, the Court must determine the law that governs each contract.  Second, the Court must calculate the damages that Sunstock owes on each Note, with an eye to the governing law. Third, the Court must decide whether to convert the dollar amount owed to Auctus and EMA, if any, into shares.

### A.  Legal Framework

The Court rules that California law applies to the Auctus Notes and New York law applies to the EMA Notes.  Since the Court sits in Massachusetts, it applies Massachusetts's choice of law approach to determine the law governing Auctus and EMA's damages.  See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 494, 496 (1941); Davidson v. Cao, 211 F. Supp. 2d 264, 273

(D. Mass. 2002) (Woodlock, J.) ("A federal court adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." (quoting Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989))).  Although the Court could "choose[] to forgo independent choice of law analysis and accept the parties' agreement" that Nevada law applies, the Court instead chooses to analyze choice of law independently because doing so furthers justice.  See Shay v. Walters, 702 F.3d 76, 80 (1st Cir. 2012) (quoting Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991)) (accepting parties' implicit assumption that Massachusetts law applies while acknowledging that courts may permissibly disregard such acquiescence).

Before deciding which law to apply, Massachusetts courts "consider whether the choice between the laws of the involved jurisdictions will affect the legal result."  Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 584 (2010) (citing Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 332 n.7 (1983)).  Here, the Court observes a true conflict exists between Nevada and Delaware, which do not allow corporations to raise usury defenses, and California, Massachusetts, and New York, which allow corporations to void usurious loans under certain circumstances.  Compare Del. Code tit. 6, § 2306; Nev. Rev. Stat. § 99.050, with Cal. Const. art. XV, Mass. Gen. Laws ch.

271, § 49, N.Y. Penal Law § 190.40; N.Y. Gen. Oblig. Law § 5-521.  Moreover, California, Massachusetts, and New York cap interest at different rates and offer different exceptions to their regulatory regimes.  See Cal. Const. art. XV; Mass. Gen. Laws ch. 271, § 49; N.Y. Penal Law § 190.40; N.Y. Gen. Oblig. Law § 5-521.

Applying Massachusetts choice of law principles, the Court declines to enforce the Auctus Notes' choice of Nevada law, as Nevada has no apparent relationship to Auctus, Sunstock, or the subject matter of the Auctus Notes.  Instead, the Court applies California law because it has the most significant relationship to the Auctus Notes.  The Court, however, enforces the EMA Notes' choice of New York law because EMA maintains its principal place of business in New York, and the relevant New York contract law doctrines do not contravene California's fundamental public policies.

### 1.   Choice of Law Clause

The Court rules that the Auctus Notes' choice of law clause is void.  The EMA Notes' choice of law clause, however, is valid.  Where contracting parties "have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy."  Oxford Glob. Res., LLC v. Hernandez, 480 Mass. 462, 468 (2018) (quoting Hodas v. Morin, 442 Mass. 544, 549–50

(2004)).  Massachusetts courts decide whether to enforce a

choice of law agreement using "the two-tiered analysis set forth

in the Restatement (Second) of Conflict of Laws § 187(2) (1971)

[the 'Restatement']."  See Hodas, 442 Mass. at 550.  The

Restatement presumes that the parties' choice of law applies

unless:

> (a) the chosen state has no substantial relationship to
> the parties or the transaction and there is no other
> reasonable basis for the parties' choice, or
>
> (b) where application of the law of the chosen state
> would be contrary to a fundamental policy of a state
> which has a materially greater interest than the chosen
> state in the determination of the particular issue and
> which, under the rule of § 188, would be the state of
> the applicable law in the absence of an effective choice
> of law by the parties.

Restatement § 187(2).

The Auctus Notes specify that Nevada law governs them,

while the EMA Notes select New York law.  See First EMA Note 20;

First Auctus Note 20; Second Auctus Note 20; Second EMA Note 20.

The Court first examines the choice of Nevada law for the Auctus

Notes, then turns to the EMA Notes' choice of New York law.

### a.    Nevada Law

The Auctus Notes' choice of law clause fails the first tier

of the Restatement analysis because Auctus, Sunstock, and the

Auctus Notes lack a substantial relationship to Nevada.  Comment

f to section 187 of the Restatement lists several factors that

may evince a relationship between a state and a transaction,

such as "where one of the parties is domiciled" or has its
"principal place of business;" "where performance by one of the
parties is to take place" or "the place of contracting."  Both
Auctus and Sunstock are organized in Delaware.  <u>See</u> First EMA
Note 1; First Auctus Note 1.  Auctus maintains its principal
place of business in Massachusetts, <u>see</u> Compl. ¶ 4, and Sunstock
has its principal place of business in California, <u>see</u> <u>id.</u> ¶ 6.
Auctus has not claimed or submitted any evidence showing that
they conduct business in Nevada or negotiated the contract
there.  This Court thus rules that a substantial relationship
does not exist between Nevada law and the parties or the
transaction.

    This Court also rules that Auctus and Sunstock did not have
an otherwise reasonable basis for their choice of Nevada law.
Surely, in some instances, "parties to a multistate contract may
have a reasonable basis for choosing a state with which the
contract has no substantial relationship."  Restatement § 187
cmt. f.  For example, "when contracting in countries whose legal
systems are strange to them as well as relatively immature, the
parties should be able to choose a law on the ground that they
know it well and that it is sufficiently developed."  <u>Id.</u>; <u>see,
e.g.</u>, <u>Shimizu Corp.</u> v. <u>Dow Roofing Sys., LLC</u>, No. 11-30085-DPW,
2013 WL 5513035, *8 (D. Mass. Sept. 27, 2013) (Woodlock, J.)
(enforcing choice of United Kingdom law in contract between

Massachusetts company and Malaysian subsidiary of Japanese company because each company's domestic law may have been "strange" to the other, while United Kingdom law was "neutral, but familiar and well developed").

Not so here.  Though California, Delaware, Massachusetts, and New York each have different laws, all share similar legal systems.  Indeed, Auctus justifies its choice of law with circular reasoning: it says that it would be "unreasonable to apply Massachusetts law" because the parties chose Nevada law, "where no usury laws exist."  Damages Br. 22.  Since Auctus does not supply some other reasonable basis for their choice of law,[3] the Court rules that the Auctus Notes' choice of Nevada law is invalid.

---

[3] Auctus and EMA fail to cite cases where courts applying section 187 of the Restatement enforced contracting parties' choice of the law of an unrelated state.  See Damages Br. 18-21 (citing Viridis Corp. v. TCA Glob. Credit Master Fund, LP, 721 F. App'x 865, 872-74 (11th Cir. 2018) (not analyzing choice of law with Restatement test); Lambert v. Kysar, 983 F.2d 1110 (1st Cir. 1993) (defendant's business located in state of chosen law); Barnes Group, Inc. v. C&C Prods., Inc., 716 F.2d 1023 (4th Cir. 1983) (plaintiff headquartered in state of chosen law); Massengale v. Transitron Elec. Corp., 385 F.2d 83 (1st Cir. 1967) (one contracting party was a "Minnesota firm" and contract chose Minnesota law); RMP Capital Corp. v. BAM Brokerage, Inc., 21 F. Supp. 3d 173 (E.D.N.Y. 2014) (plaintiff maintained principal place of business in state of chosen law); Morris v. Watsco, Inc., 385 Mass. 672 (1982) (same); Nissenberg v. Felleman, 339 Mass. 717 (1959) (contract negotiated and transaction occurred in state of chosen law)).

### b.   New York Law

The Court upholds the EMA Notes' choice of New York law. As for the first tier of the Restatement analysis, New York law bears a "substantial relationship to the parties" because it is the state in which EMA maintains its headquarters.  See Restatement § 187(2)(a), cmt. f; Plante & Moran, PLLC v. Andover Healthcare, Inc., Civ. A. No. 17-10093-DJC, 2018 U.S. Dist. LEXIS 25526, at *8 (D. Mass. Feb. 16, 2018) (Casper, J.) (holding that Michigan had a substantial relationship to contract because plaintiff's principal place of business was there); Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 197 (2013) (holding that Massachusetts had a substantial relationship to contract because defendant had headquarters there).

The second tier of the Restatement analysis does not compel a different conclusion.

California has the most significant relationship to this dispute.  Section 188 instructs the Court to consider "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."  The papers submitted to the Court do not reveal where EMA and Sunstock executed, negotiated, or performed the

contract.   Although EMA and Sunstock both were formed in
Delaware, that fact does not significantly influence the choice
of law analysis.   See Restatement § 188 cmt. 2(e) ("[A]
corporation's principal place of business is a more important
contact than the place of incorporation.").

The Court, therefore, analyzes the factors elucidated in
section 6, which lists:

> (a) the needs of the interstate and international
> systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and
> the relative interests of those states in the
> determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field
> of law,
> (f) certainty, predictability and uniformity of result,
> and
> (g) ease in the determination and application of the law
> to be applied

The balance of these factors tilts towards California.

New York has some interest in allowing its financial
companies to lend money freely, and the EMA Notes' interest
rates of 10% and 12% do not violate New York's usury laws.   See
N.Y. Penal Law § 190.40 (deeming interest rate usurious at 25%);
N.Y. Gen. Oblig. Law § 5-521 (providing that limited liability
business organizations may raise only criminal, not civil, usury
as a defense to a contract).   While it is unclear whether an
obligation resulting from a debtor's default can violate New
York's criminal usury statute, the Default Rate inches under the

25% threshold.  See Madden v. Midland Funding, LLC, 237 F. Supp. 3d 130, 141-46 (S.D.N.Y. 2017) (predicting that New York state courts would rule that default obligations may be criminally usurious).

In contrast, California has an interest in protecting resident businesses from loans that violate its public policy. Article XV, section 1 of the California Constitution prohibits commercial loans made:

> at a rate not exceeding the higher of (a) 10 percent per annum or (b) 5 percent per annum plus the rate prevailing on the 25th day of the month preceding the earlier of (i) the date of execution of the contract to make the loan or forbearance, or (ii) the date of making the loan or forbearance established by the Federal Reserve Bank of San Francisco on advances to member banks under Sections 13 and 13a of the Federal Reserve Act as now in effect or hereafter from time to time amended.

Since the rate available at the San Francisco Federal Reserve Bank did not exceed 5% when EMA and Sunstock agreed to the EMA Notes, the usury rate was 10%.  See Discount Rate, Federal Reserve Bank of San Francisco, https://www.frbsf.org/banking/discount-window/discount-rate/ (last visited Sept. 17, 2019). Therefore, EMA charged Sunstock two percentage points more than the allowable interest rate in California on the Second EMA Note.  Second EMA Note 1.

Additionally, EMA asserts that it relied on numerous representations from Sunstock that Sunstock would use the proceeds from the notes on real estate and other commercial

projects in California.  Id. ¶¶ 10-38.  As a consequence, California has the greatest interest in these notes.

Although California has an interest in protecting its debtors, that interest does not rise to the level of a fundamental public policy.  See Gamer v. duPont Glore Forgan, Inc., 135 Cal. Rptr. 230, 233-35 (Ct. App. 1976) (acknowledging California's "strong public policy against usury" but nonetheless enforcing choice of New York law under Restatement principles); Ury v. Jewelers Acceptance Corp., 38 Cal. Rptr. 376, 382 (Ct. App. 1964) (reasoning that "California does not have such a strong public policy against any and all contracts which would be usurious if they were made and to be performed" in California); Sawyer v. Bill Me Later, Inc., No. CV1004461SJOJCGX, 2010 WL 11492736, at *5 (C.D. Cal. Dec. 14, 2010) (enforcing choice of Utah law in allegedly usurious contract between Utah lender and California debtor because Utah had a stronger policy favoring free contracting than California did for protecting debtors); cf. Mencor Enters., Inc., v. Hets Equities Corp., 235 Cal. Rptr. 464, 470 (Ct. App. 1987) (viewing California's interest in enforcing its usury laws as strong but not so fundamental as to dispense with a choice of law clause where the parties chose a state related to the contract). Therefore, the Court honors the EMA Notes' choice of New York law.

### 2.   California Law Applies to the Auctus Notes

The Court applies California law to the notes that purported to choose Nevada law.  For the reasons discussed in the preceding section, the Court concludes that California law would govern the EMA Notes but for the EMA Notes' valid choice of law clause.  In this section, the Court explains its decision to apply California law to the Auctus Notes.

The Court reasons that California law has the most significant relationship to the case under the Restatement, as opposed to the other two apparent possibilities, Delaware and Massachusetts.  The same evidentiary deficiencies that plague the EMA Notes also plague the Court's application of the section 188 factors to the Auctus Notes, so the Court turns again to the general factors announced in section 6.  Delaware relates to the case only because the parties organized themselves under its laws, but nothing in the contract or complaint indicates that Delaware has an interest in the dispute.  See generally Compl. Massachusetts has some interest in this contract, as Auctus has its headquarters in Boston.  But the fact that the Default Rate facially runs afoul of the Massachusetts Usury Act, Mass. Gen. Laws ch. 271 § 49, complicates the analysis.  While Auctus

provides developed argument[4] why the Auctus Notes might fall into
an exception from the Massachusetts Usury Act, Massachusetts
does not seem to have a strong public policy promoting or
prohibiting Auctus from arranging these deals with entities
outside of the Commonwealth.  Cf. Greenwood Trust Co. v.
Massachusetts, 776 F. Supp. 21, 41-42 (D. Mass. 1991) (ruling
that the Massachusetts Usury Act reflects the Commonwealth's
fundamental public policy of protecting Massachusetts debtors),
overruled on other grounds 971 F.2d 818 (1st Cir. 1992).  As
Auctus observes in its supplemental briefing, Massachusetts
means to protect vulnerable consumer debtors with its usury law,
not necessarily to deter its citizens from making loans with
high interest rates to out-of-state borrowers.  Damages Br. 25-
26.

---

[4] Auctus chiefly argues that the Massachusetts Usury Act
does not apply to the Auctus Notes because securities "do not
fall within the scope of the Massachusetts Usury Act."  Pl.
Auctus Fund, LLC's & EMA Financial, LLC's Supp. Mem. Supp.
Converted Mots. Summ. J. Contract & Implied Covenant Claims
(Counts III & IV) Alone 8-16 (citing Mass. Gen. Laws ch. 271,
§ 49), ECF No. 37-1.  Although the Court need not reach this
argument since Massachusetts law does not apply, the Court
observes that the Massachusetts Usury Act only exempts "any loan
the rate of interest for which is regulated under any other
provision of general or special law or regulations promulgated
thereunder."  Mass. Gen. Laws ch. 271, § 49(e) (emphasis added).
Because Auctus does not cite a provision of the securities laws
that regulates interest rates, the Court doubts this exception
would help Auctus were Massachusetts law to apply.

Meanwhile, as the Court observes above, California has a comparably stronger public policy interest in protecting its residents from usurious loans to be used for business ventures in California.  Consequently, the Court rules that California law applies to the Auctus Notes.

**B.   Damages Calculation**

Having decided the relevant sources of law, the Court calculates the dollar amount of damages that Sunstock owes to Auctus and EMA.  The Court analyzes whether Auctus and EMA may recover damages of the principal plus the contracted Default Rate and other "stipulated damages."  See First Auctus Note § 4.7; Second Auctus Note § 4.7

### 1.   The Auctus Notes Violate California's Usury Proscription

The Court holds that Auctus may receive only the principal on the Auctus Notes, offset by the interest and reduction in principal that Sunstock paid, if any.  See Hardwick, 217 Cal. Rptr. 3d at 886 (quoting Gibbo, 19 Cal. Rptr. 3d at 834; citing Westman, 4 P.2d at 135-39); Cal. Const. art. XV, § 1(b); Cal. Civ. Code § 1916-2.[5]  In California, "[t]he usurious provisions of a loan are void on the grounds of illegality or unlawfulness

---

[5] California's statutory usury prohibition, which predates article XV of its constitution, continues in effect insofar as it does not contradict that later-in-time constitutional provision.  See Bisno v. Kahn, 170 Cal. Rptr. 3d 709, 716-18 (Ct. App. 2014) (citing Cal. Civ. Code §§ 1916-1 - 1916-5).

because they violate express provisions of law." <u>WRI Opportunity Loans II, LLC</u> v. <u>Cooper</u>, 65 Cal. Rptr. 205, 219 (2007). Therefore, usury appears to be a non-waivable defense in California. <u>See</u> <u>id.</u> (quoting 1 B.E. Witkin, <u>Summary of Cal. Law: Contracts</u> § 4433, pp. 497–498 (10th ed. 2005)); <u>see also</u> 5 Richard A. Lord, <u>Williston on Contracts</u> § 12:5 (4th ed. July 2019 update) ("A court will not generally allow the defendant to waive the defense of illegality, even if he or she wishes to do so.").[6]

California courts rule that an agreement violates California's usury laws if it (1) constitutes a "loan or forbearance"; (2) requires the borrower to pay interest in excess of the statutory maximum; (3) mandates that the borrower absolutely must repay the principal and interest; and (4) results from the lender's "willful intent to enter into a usurious transaction." <u>Bisno</u> v. <u>Kahn</u>, 170 Cal. Rptr. 3d 709, 715 (Ct. App. 2014) (quoting <u>Ghirardo</u> v. <u>Antonioli</u>, 883 P.2d 960, 965 (Cal. 1994)); <u>see generally</u> Susan R. Goldfarb & Thomas

---

[6] Thus, California law voids section 4.10 of the Auctus Notes, which purports to waive the usury laws. Further, because it appears that Sunstock paid usurious interest on the Auctus Notes, the Court concludes that a California court would not honor section 4.10's substitute interest rate. <u>See</u> <u>Hardwick</u>, 217 Cal. Rptr. 3d at 897 ("If a transaction is usurious in its inception, it remains usurious until purged by a new contract." (quoting <u>Whittemore Homes, Inc.</u> v. <u>Fleishman</u>, 12 Cal. Rptr. 235, 238 (Ct. App. 1961))).

E. McCurnin, <u>Usury and the California Financing Law: Knowing the Exemptions and Avoiding the Traps</u>, 33 Cal. Bus. L. Prac. 1 (Winter 2018).

While California courts start with the presumption that a transaction is legal, <u>Moe</u> v. <u>Transamerica Title Insurance Company</u>, 98 Cal. Rptr. 547, 554 (Ct. App. 1971), and place the burden on the borrower to prove the transaction was not so, <u>Ghirardo</u>, 883 P.2d at 965, the Court concludes that each element of usury is met on the face of the documents that Auctus submitted in support of damages.  To illustrate, the Court analyzes each element in turn.

### a.   Loan

First, the Auctus Notes constitute loans under California law.  "A loan transaction contemplates a debtor-creditor relationship with an obligation of the debtor to repay the amount of the loan to the creditor." <u>Ghirardo</u>, 883 P.2d at 968 (internal quotation omitted).  California courts hold that a transaction involves a loan where "the bargain of the parties, assessed in light of all the circumstances and with a view to substance rather than form, has as its true object the hire of money at an excessive rate of interest." <u>Boerner</u> v. <u>Colwell Co.</u>, 577 P.2d 200, 204 (Cal. 1978).

The Auctus Notes create an obligation for Sunstock to repay the principal amounts to Auctus.  <u>See</u> <u>Ghirardo</u>, 883 P.2d at 968.

Auctus received nothing but Sunstock's promise of repayment, with interest, in exchange for the purchase price on those notes.  See Boerner, 577 P.2d at 204.  Accordingly, the Auctus Notes qualify as loans.

### b.   Usurious Rate

Second, as the Court alluded to above, Auctus charged Sunstock a usurious interest rate.  California caps interest rates at the higher of 10% per year or 5% per year plus the discount rate available for eligible banks from the Federal Reserve Bank of San Francisco when the parties either executed the contract or the lender executed the loan.  See Cal. Const. art. XV, § 1(b).  Since the discount rate did not exceed 5% from 2017-19, California capped interest rates at 10% for present purposes.  See id.; Federal Reserve Bank of San Francisco, supra.  Therefore, the Auctus Notes' 12% interest rate constituted a usurious interest rate.

### c.   Absolute Obligation to Repay

Third, the Auctus Notes conferred an absolute obligation on Sunstock to repay Auctus.  While the usury prohibition does not apply where the borrower's payment of interest depends on contingent events, that risk "must be something over and above the risk which exists with all loans (whether the risk be great or small), that the borrower will be unable to pay."  Thomassen v. Carr, 58 Cal. Rptr. 297, 301 (Ct. App. 1967).  Here, Sunstock

agreed to return the Auctus Notes' principal with a set interest rate to Auctus.  Although Auctus has the right to demand payment in cash or equity stock, the latter option does not change the analysis.  In either event, Sunstock absolutely must pay Auctus the amounts described in the relevant notes.  See WRI Opportunity Loans II, LLC v. Cooper, 65 Cal. Rptr. 3d 205, 214, 217-18 (Ct. App. 2007) (holding loan terms usurious because value of interest payments did not vary).  Though the amount of stock may vary, the Auctus Notes require Sunstock to deliver Auctus a set cash value of stock.  First Auctus Note 1 & art. III; Second Auctus Note 1 & art. III.  Accordingly, the Auctus Notes absolutely obligate Sunstock to repay Auctus.

### d.   Intent

Fourth, Auctus had the requisite intent under California law.  The California Supreme Court describes this element as "narrow," without "requiring a conscious attempt, with knowledge of the law, to evade it."  Ghirardo, 883 P.2d at 965 (quoting Thomas v. Hunt Mfg. Co., 269 P.2d 12, 16 (Cal. 1954)).  The lender need only intend to charge more interest than the law permits.  Klett v. Security Acceptance Co., 242 P.2d 873, 884 (Cal. 1952).  Therefore, the Auctus Notes' explicitly stated 12% interest rate manifests Auctus's intent to collect interest in excess of California's 10% interest rate cap.  See First Auctus Note 1, Second Auctus Note 1.

Taken in whole, the Court rules that California law limits Auctus's recovery to unpaid principal, set off by the interest that Sunstock has paid.  To the extent that California's prohibition of usury does not settle Sunstock's liability, the Court agrees with Sunstock that the Auctus Notes' Default Sum formula and flat fees for certain breaches are unenforceable penalties in this context because they "operate[] to compel performance of an act . . . only in event of a default" and do not take into account "the actual damages sustained by the party aggrieved by the breach."  See Opp'n 3-6 (citing Nevada law); Garrett v. Coast & S. Fed. Sav. & Loan Ass'n, 511 P.2d 1197, 1202 (Cal. 1973); Cal. Civ. Code § 1671(b); First Auctus Note art. III (allowing Auctus to collect 150% of the unpaid principal and past-due and future interest in event of default); Second Auctus Note art. III.[7]

### 2.    The EMA Notes' Damages Calculation Constitutes an Unenforceable Penalty

Although EMA may collect interest that Sunstock failed to pay when due at the elevated rate of 24%, EMA may not collect additional damages pursuant to the EMA Notes' damages provision because the damages provision is a penalty.  Under New York law, "a provision which requires, in the event of contractual breach,

---

[7] In California, default provisions cannot render a contract usurious.  Sharp v. Mortgage Sec. Corp. of Am., 9 P.2d 819, 820 (Cal. 1932).

the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable." Truck Rent-A-Ctr, 361 N.E.2d at 1018. New York permits parties to agree to liquidated damages clauses so long as the purpose of the clauses is "to provide fair compensation [not] to secure performance by the compulsion" by the threat of a disproportionate penalty. See id. Accordingly, New York courts invalidate contract provisions as unenforceable penalties where the parties could "readily ascertain[]" damages at the time or if the parties agreed to damages "conspicuously disproportionate to these foreseeable losses." JMD Holding Corp. v. Congress Fin. Corp., 828 N.E.2d 604, 609 (N.Y. 2005).

Although the party attempting to avoid a penalty bears the burden of proving that the provision is against New York's public policy, this Court rules that the EMA Notes provide for remedies that, on their face, meet both conditions. See 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc., 25 N.E.3d 952, 957 (N.Y. 2014).

To start, the Court rules that EMA and Sunstock could have ascertained EMA's actual damages when they negotiated the EMA Notes: They could have added up (1) the principal yet to be paid; (2) all unpaid interest; and (3) interest on the unpaid amounts. See JMD Holding Corp., 828 N.E.2d at 609. Indeed, this amount is part of the EMA Notes' method of calculating

damages, to which EMA and Sunstock agreed.  First EMA Note art. III; Second EMA Note art. III.

What's more, the Court can see only one purpose for multiplying that amount by 150% or charging additional flat fees for other breaches: to coerce Sunstock's performance.  See Truck Rent-A-Ctr., 361 N.E.2d at 1018.  After all, the aforementioned amount already accounts for the doubled interest rate on overdue payments.  Consequently, the proposed application of the EMA Notes' damages calculation provisions violate New York law here, and the Court declines to enforce them.

### C.   Injunction for Specific Performance

The Court rejects Auctus and EMA's motion to enter an injunction converting the damages into shares.  It adopts Judge Burroughs's reasoning in ruling on similar requests.  See First Columbia Gold, 2019 WL 1316736, at *3 (ruling on breach of similar contract that "the allowed pecuniary award [is] at least adequately compensatory [and that] the Court is concerned that the proposed injunction lacks clarity, presents administrative difficulties, and seeks to bind parties that are not before the Court"); Auctus Fund, LLC v. ERHC Energy, Inc., Civ. A. No. 18-10216-ADB, 2019 WL 1316749, at *3 (D. Mass. Mar. 21, 2019) (similar); Mem. & Order Mot. Default J., Auctus Fund, LLC v.

<u>Nano Mobile Healthcare, Inc.</u>, Civ. A. No. 17-11974-ADB (D. Mass. Mar. 12, 2019), ECF No. 28 (similar).[8]

## IV. CONCLUSION

The Court thus makes the following rulings of law. Sunstock owes Auctus the remaining principal on the Auctus Notes. Per the Auctus Notes, Auctus may recover its attorney's fees and costs because it received a judgment on the merits that Sunstock failed to pay money it legally owed to Auctus. <u>See</u> Cal. Civ. Code § 1717(a); First Auctus Note § 4.6; Second Auctus Note § 4.6.

Further, this Court rules that Sunstock owes EMA the unpaid principal of the EMA Notes, plus pre-judgment interest at the Default Rate and post-judgment interest at the statutory rate. EMA may recover its attorney's fees and costs related to enforcing those Notes' terms. <u>See</u> <u>Ambac Assur. Corp.</u> v. <u>Countrywide Home Loans, Inc.</u>, 106 N.E.3d 1176, 1185-86 (N.Y. 2018) (ruling that prevailing party may recover attorneys' fees

---

[8] The Court acknowledges Auctus and EMA's submission of the Final Judgment in <u>Auctus Fund, LLC</u> v. <u>Cardinal Energy Group LLC</u>, Civ. A. No. 18-11625-FDS (D. Mass. July 31, 2019) (Saylor, J.). Pls. Auctus Fund, LLC's & EMA Financial, LLC's Suppl. Papers Supp. Their Mot. Entry Final J. Against Def. Sunstock, Inc., ECF No. 53 (attaching decision). The Court respectfully adopts Judge Burroughs' approach to injunctive relief. Further, the Court has not received a motion to enter a default on the remaining counts of the complaint since it converted Auctus and EMA's pretrial motions into summary judgment motions on the contract claims, <u>see</u> ECF No. 33.

and costs when the contract is "unmistakably clear" that it authorizes those fees); First EMA Note § 4.6; Second EMA Note § 4.6.

The Court thus requests Auctus and EMA submit affidavits, with exhibits if necessary, advising the Court as to the damages and attorney's fees and costs pursuant to this memorandum and order.[9]  The parties shall have thirty days from the date of this order to comply.

Because the Court lacks that information at this time, it DENIES without prejudice Auctus and EMA's motion for entry of final judgment on the contract claims, ECF No. 50.  The Court also DENIES the motion with respect to Auctus's Chapter 93A claim because Auctus only moved -- and the Court only entered judgment -- on its contract claims.[10]

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[9] Auctus and EMA's motion for entry of final judgment does not include the necessary figures and evidence for the Court to calculate damages.  Although the exhibits to the converted summary judgment motion contain helpful facts and figures, the Court requests Auctus and EMA's assistance to ensure that they receive the damages to which the law entitles them.

[10] The Court further observes that, to the extent Auctus bases its Chapter 93A claim on the breach of contract allegations, Massachusetts law may not apply.  See supra section III.A.2 (analyzing choice of law for contract, but not Chapter 93A, claims); Northeast Data Sys., Inc. v. McDonnell Douglas

_____

Computer Sys. Co., 986 F.2d 607, 609 (1st Cir. 1993) (ruling that plaintiff could not proceed under Chapter 93A to press consumer protection claim predicated on breach of contract where California law governed the contract).  Nevertheless, insofar as Auctus alleges fraud, tort principles govern whether Auctus may rely on Chapter 93A.  See Compl. ¶¶ 90-91; Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 12 (1st Cir. 1994).  The Court will thus entertain a motion for entry of default.

The Court offers a few words of caution regarding that possible motion.  First, the Court observes that it is hornbook law that "[a]ctual damages awarded under 93A cannot be duplicative or cumulative of actual damages awarded under some common law theory like contract or tort."  52 Michael C. Gilleran, Mass. Prac., Law of Chapter 93A § 11.5 n.1 (Sept. 2018 update) (collecting cases).  Second, the Court notes that the proper measure of actual damages for a fraud-based Chapter 93A claim here would be the difference between the actual value of the Auctus Notes and the value as reflected by Sunstock's representations.  See Passatempo v. McMenimen, 461 Mass. 279, 299 (2012).  The Court queries whether reliance damages would be more appropriate if calculating this difference would require so much speculation "as to 'meet serious difficulties of proof.'" See id. & n.27 (citing Rice v. Price, 340 Mass. 502, 508 (1960)).